UNITED STATES

v.

**Airman Lisa M. SMITH, FR
381–80–9631, United States
Air Force.**

**ACM 28014.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 12 June 1989.

Decided 18 May 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Mark R. Land.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Terry M. Petrie and Major Paul H. Blackwell, Jr.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

SPILLMAN, Judge:

At the time of trial, the appellant was a 19 year old married airman who had been on active duty for over one year. Contrary to her pleas, she was convicted by general court-martial of absence without leave (AWOL), two larcenies by check, simultaneous use of marijuana and cocaine, and wrongfully and knowingly receiving stolen checks of nominal value, in violation of Articles 86, 121, 112a and 134, UCMJ, 10 U.S.C. §§ 886, 921, 912a, 934, respectively.

### Factual Setting

Around midnight, 21 September 1988, the appellant was observed at a party in her apartment by an undercover Office of Special Investigations (OSI) informant. She was seated in the living room with a small group of people, including her husband, Kevin Thomas. From past experience the informant recognized marijuana buds and seeds scattered on a tray sitting on a table in front of the group. He also observed Kevin roll a marijuana cigarette and use a razor blade to sprinkle a white powder on it; the powder was later identified by Kevin as being cocaine. The informant then observed Kevin light the cigarette, use it and pass it around to the appellant who "smoked part of it."

On 13 February 1989 Special Agent Filipovich of the OSI interviewed the appellant after properly advising her of her rights under Article 31, UCMJ, 10 U.S.C. § 831, and her rights to counsel. After acknowledging understanding of her rights and waiving her rights to remain silent and to the assistance of counsel, appellant orally admitted to knowingly and voluntarily using marijuana and cocaine on 21 September 1988.

During February 1989 several checks were stolen from Albert and Janie Monsivais; the Monsivais did not know appellant or her husband. On 21 and 22 February 1989 appellant's husband completed the front portion of two of the stolen checks and forged Albert Monsivais' name to each check. The first check was made payable to Kevin Thomas and Lisa Smith in the amount of $450.00, and the memo section of the check reflected "car-used-bought." Appellant and her husband endorsed the check, and appellant added her bank account number. The next day she deposited the check into her account at the Lackland Federal Credit Union. The second stolen check was made payable to the appellant in the amount of $500.00, and the memo sec-

tion reflected "TV–Stereo." Appellant again endorsed the check and added her bank account number; the next day the check was deposited into appellant's credit union account. Both checks were cleared through banking channels before the thefts were discovered.

On 22 and 23 February 1989, the appellant attempted to get relieved from duty so she could spend time with her husband. She told her commander that Kevin was planning to leave for Florida, and she needed "serious time" with him. Based on her prior record, appellant was denied further time off and was advised by her commander, on 23 February, that he would be initiating court-martial action against her for use of drugs and other offenses. Appellant failed to report for duty on Friday, 24 February, and remained in AWOL status until 1 March 1989. She and Kevin had been arrested in Titus County, Texas, on 28 February when Kevin failed to pay for gasoline at a gas station. On 1 March he was under charges, and appellant was awaiting his release from jail, when she admitted to a deputy sheriff that she was in the Air Force.

On 13 February 1989, Mr. Michael Harper discovered that his checkbook was missing. At that time he did not know appellant or her husband. On 25 February he was called by a check cashing service in San Antonio and advised that a Kevin Thomas had presented one of his checks with his preprinted phone number scratched out and a different number written on its face. Mr. Harper called the number Kevin had written on the check; a woman answered, claimed she was Mr. Harper's wife and authorized payment of the check. (During her testimony appellant denied she was the woman who received this call). The check cashing service did not cash the check for Kevin Thomas. On 1 March 1989, when Kevin Thomas' car was inventoried by the Titus County Sheriff's Office, checks imprinted with the name Michael T. Harper were recovered. Among them was a check dated 24 February 1989, made payable to Lisa M. Smith, in the amount of $450.00 and bearing the forged signature of Mr. Harper. This check also bore the notation that it was for a "stereo" and was one of the blank checks apparently stolen from Mr. Harper.

Appellant testified at great length concerning how her husband either committed the criminal acts charged against her or coerced, forced, tricked or cajoled her into aiding him. She referred back to their school days in Ohio and how Kevin followed her after she joined the Air Force; how he forced her to marry him; how he kept all of her money; how he threatened violence against her brother, grandmother, and herself; and how he slapped, struck and was otherwise abusive to her on many occasions. She claimed to be deathly afraid of him and willing to do almost anything to avoid his physical abuse.

She stated that Kevin forced her to leave San Antonio in AWOL status and that he forced her to tell her commander she needed to spend time with him. However, she could not explain why she failed to report him as her abductor to the Titus County Sheriff's Deputy who apprehended him. Nor could she explain why she said she was 13 years old when the Deputy initially questioned her. Additionally, she could not explain why she failed to turn him in at various highway stops, one on a military post, before Kevin was apprehended.

Regarding the two checks stolen from the Monsivais, she explained that Kevin introduced her to someone named Albert who she assumed was Mr. Monsivais, that she did not look at the checks closely when she endorsed them, that they used her checking account to deposit the proceeds because Kevin did not have an account and that the $450.00 check was, according to Kevin, for the sale of his car in Ohio. Since appellant and Kevin did not own a TV and stereo, she could not explain the $500.00 check for the sale of such items. She purportedly failed to look at that check closely when she endorsed it. Furthermore, appellant stated that, at some point, she recognized her husband's handwriting as that of the maker of the two checks.

As to the checks stolen from Mr. Harper which the appellant was convicted of re-

ceiving on 25 February 1989, she testified that Kevin forced her to endorse one on 25 February in the amount of $450.00 and another the same day in the amount of $150.00. Kevin had made both checks payable to appellant prior to forcing her to endorse them, she claimed. Kevin received the money for the second check, but it was later discovered to be a forgery. When appellant endorsed the Harper checks, she suspected something was wrong. According to appellant, she did not know about the remaining Harper checks seized from Kevin's car on 1 March.

*Assertions Of Error*

I

On cross-examination of the appellant, trial counsel, over timely defense objection, was allowed to question her regarding a letter she wrote to her husband on 14 April 1989. The letter was written while she was in military pretrial confinement, and he was confined in the Bexar County, Texas, detention facility. From the record of trial, it is unclear how the prosecution came into possession of the letter; however, an attached postmarked envelope suggests that the letter was intercepted at the county jail.

■ Before this Court, as did the trial defense counsel, appellate counsel asserts that appellant's letter to her husband was a privileged confidential communication between husband and wife. As such, counsel claims that the prosecution should not have been allowed to cross-examine appellant regarding portions of the letter under Mil.R. Evid. 504(b) and *United States v. Tipton,* 23 M.J. 338, 343 (C.M.A.1987). Appellate defense counsel further accurately asserts that Mil.R.Evid. 504(c) provides specific ex-

ceptions from the spousal confidential communications privilege for crimes against or involving a spouse or child, sham marriages or crimes involving the importing or transporting of a spouse for prostitution or other immoral purposes. Since none of these exceptions apply to the case at bar, counsel contends that the trial judge erred in applying a federal common law exception, in reliance on *United States v. Martel,* 19 M.J. 917, 928 (A.C.M.R.1985), which provides that communications between spouses voluntarily participating in joint criminal ventures are not entitled to protection as confidential marital communications.[1]

Regarding the application of a federal common law exception to the marital communications privilege, the Army Court of Military Review in *Martel,* a well-reasoned opinion by Senior Judge Raby, concluded such application to be appropriate, and we agree. Historically, the rationale underlying the confidential communications privilege has been to protect the intimacy of private marital communications. *See United States v. Sims,* 755 F.2d 1239 (6th Cir. 1985), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985); *United States v. Ammar,* 714 F.2d 238, 258 (3rd Cir.1983), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). In balancing this privilege against the need for truth in criminal proceedings, we conclude that communications between spouses, which are intended to perpetrate a fraud on a court through joint criminal misconduct, should not be protected by the marital communications privilege. We further find this holding to be consistent with Mil.R.Evid. 501(a)(4), which provides that the principles of common law generally recognized in the trial of criminal cases in federal courts under Fed-

1. Air Force Regulation 125–18, *Operation of Air Force Correction and Detention Facilities,* para. 4–4 (Feb 1980), which was in effect on 14 April 1989, provided that outgoing prisoner correspondence, such as appellant's letter to her husband, would be considered nonprivileged and subject to inspection before posting. Additionally, during initial confinement processing, prisoners were required to sign a DD Form 499 acknowledging their understanding and approval of inspection of nonprivileged outgoing mail. Arguably this briefing and inspection approval

by prisoners constitutes waiver of the privilege under Mil.R.Evid. 504(b)(2). *See United States v. Willoughby,* 860 F.2d 15 (2nd Cir.1988), *cert. denied,* 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978, (1989), regarding censorship of pretrial detainees. Since compliance with this regulation was not established at trial and since appellant's letter was obtained by the Government after its posting, we are unwilling to rely on the presumption of regularity in evaluating whether this appellant waived the confidential communication privilege.

eral Rule of Evidence 501, may be applied, "insofar as the application of such principles in trials by courts-martial is practicable and not contrary to or inconsistent with the code, these rules, or this Manual." Furthermore, Mil.R.Evid. 102 provides that these rules "shall be construed to secure fairness in administration ... and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Based on these considerations, we are very comfortable that our ruling is consistent with a quest for truth determined by just proceedings.[2]

In her 14 April letter, appellant did not specifically ask her husband to lie; however, the suggested testimony she provided him was inconsistent with certain of her pretrial admissions, her trial testimony and much of the evidence developed at trial. To facilitate understanding, it is set out in its entirety:

Dear Kev,

How are you? I'm alright, I guess. But now I am in a really deep mess. Here is the deal. If you really do care for me as you say and if you are willing to take the weight, it will be necessary for you to testify on my behalf. You will need to let these people know that *1. You forced me to leave Texas. 2. That I didn't know about the checks and that I didn't sign them. Also, that I haven't used drugs, you'll need to tell them about the time you pressured me into smoking some weed back in Feb. that I didn't know that it was laced w/ cola.* The Military can do absolutely nothing to you at all! They just need to know that you had a big influence on me and you made me do a few things I didn't agree with. But the military cannot do anything at all, nothing. Somebody will be in touch with you.

Love, Lisa

I promise that they cannot do anything to you at all.

LOVE,

LISA

Nobody read this letter.

PROMISE

I won't get the divorce if you help me. I promise.

(Emphasis added).

At trial and before this Court, defense counsel described this letter as an exhortation for Kevin to tell the truth. If that be the case, it is apparent that appellant had not decided what the "truth" was on 14 April. At trial she admitted signing (endorsing) three checks, although she denied making them. Furthermore, her assertion to Kevin that she had not used drugs, her reference to Kevin pressuring her into using marijuana and her claimed lack of knowledge regarding the presence of cocaine (in Feb.) were all inconsistent with the observations of the OSI informant and her own oral admissions to an investigator.

In contrast to Mil.R.Evid. 504, the Federal Rules of Evidence do not codify the rules pertaining to privileges. *See* Rule 501, *supra.* Under federal common law, virtually all Circuits, except the Second, recognize an exception to the marital communication privilege where both spouses are substantial participants in patently illegal activity. This "co-conspirator" or "crime-fraud" exception reasons that communications between spouses during the marriage, regarding ongoing or future crimes in which they are jointly participating, are not marital communications for purposes of the marital privilege, and thus are not entitled to protection under the privilege. *United States v. Harrelson,* 754 F.2d 1153, 1168 (5th Cir.1985), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985) (communications about past crimes repeated in furtherance of a continuing crime, conspiracy to obstruct justice, were not privileged), *citing United States v. Archer,* 733 F.2d 354 (5th Cir.1984), *cert. denied,* 469 U.S. 861, 105 S.Ct. 196, 83 L.Ed.2d 128 (1984); *United States v. Neal,* 743 F.2d 1441 (10th Cir.1984), *cert. denied,* 470 U.S. 1086, 105 S.Ct. 1848, 85 L.E.2d 146 (1985)

**2.** However, *see* S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* (2d ed.1986), 440, which provides, contrary to *Martel, supra.,* that "a good argument can be made that under military due process standards, where military courts have a choice, the more protective rule (in this case the broader privilege under 504 which includes no such exception) should be applied."

(cover up of murder and robbery making spouse an accessory); *United States v. Sims, supra; United States v. Ammar, supra;* (post-arrest conversations in furtherance of a conspiracy were not privileged); *United States v. Mendoza,* 574 F.2d 1373, 1381 (5th Cir.1978), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978); *United States v. Kahn,* 471 F.2d 191 (7th Cir.1972), *rev'd on other grounds,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974).

■ As federal case law has evolved, spousal communications about past joint crimes or communications involving criminal acts to cover up prior joint crimes or to obstruct justice have been denied benefit of the marital confidential communication privilege. In this regard we find that appellant, using her 14 April 1989 letter, was attempting to gain her husband's complicity in perpetrating a fraud on the court by soliciting his perjured testimony, in support of her own, to avoid her personal criminal responsibility. Under these circumstances, her letter was not entitled to protection as a privileged confidential marital communication.

## II

■ Appellate defense counsel asserts that the trial judge erred by receiving appellant's 14 April letter into evidence because her reference to drug involvement "back in Feb." brought uncharged misconduct to the attention of the members. Again we disagree. At trial the military judge concluded that the drug incident described in appellant's letter was the same misconduct for which she was· charged. This finding was adequately supported by the evidence since only one drug offense was charged or mentioned throughout the trial, and it also involved simultaneous use of the same drugs. To eliminate confusion and preclude prejudice to the appellant, the trial judge offered to mask appellant's reference to February in the letter. Since trial defense counsel declined to have the exhibit masked and did not request a limiting instruction as to findings, we find any possible error to have been waived. Mil.R.Evid. 103(a)(1), R.C.M. 801(g), R.C.M. 920(f).

## III

■ One other matter regarding appellant's 14 April letter deserves mention. Her reference to Kevin forcing her to leave Texas involved an offense *not* jointly participated in by appellant and her spouse, AWOL, or desertion, as charged, in violation of Article 85, UCMJ, 10 U.S.C. § 885. Accordingly, the joint criminal participation exception to the marital communications privilege did not apply to that portion of her letter. Trial defense counsel failed to object to the one question asked on cross-examination regarding this matter or to inclusion of this comment in the exhibit presented to the members. In applying waiver under Mil.R.Evid. 103(a)(1), R.C.M. 801(g) and R.C.M. 920(f), we are satisfied that the error was harmless. *United States v. Bledsoe,* 19 M.J. 641, 645 (A.F.C. M.R.1984), *aff'd,* 26 M.J. 97, 103 (C.M.A. 1988), *cert. denied,* 488 U.S. 849, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988).

## IV

■ Our review of this case disclosed that the record of trial and allied papers did not indicate with certainty whether the clemency materials submitted by appellant were considered by the convening authority as required by Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2), and R.C.M. 1107(b)(3)(A)(iii). *See United States v. Craig,* 28 M.J. 321 (C.M.A.1989). As a result we issued an Order directing the United States to show cause why the action of the convening authority was not premature. In response thereto, the government submitted an affidavit by the staff judge advocate to the convening authority attesting that the clemency materials were provided to the convening authority prior to his taking action on the case. In consideration of this affidavit, we are satisfied that the requirements cited above were duly met. *See United States v. Youngren,* 28 M.J. 255 (C.M.A.1989) (summary disposition) and *United States v. Blanch,* 29 M.J. 672 (A.F.C.M.R.1989)

## V

■ One final matter merits brief mention. In his post-trial recommendation to

the convening authority, the staff judge advocate advised that appellant had been convicted of Specification 2 of Additional Charge III, an allegation involving her knowing receipt of stolen checks and deposit slips belonging to the Monsivais', which were of nominal value. In fact the appellant was found not guilty of this specification. Since R.C.M. 1106(d)(3)(A) requires concise information as to findings, it was error to provide an inaccurate summary. Nonetheless, neither trial nor appellate defense counsel commented on this inaccuracy; therefore, such error was waived in the absence of plain error under R.C.M. 1106(f)(6). Regarding the Monsivais' checks and deposit slips, appellant was convicted of two larcenies by check in an amount totalling $950.00, and she was acquitted of a similar $200.00 check larceny. The deposit slips were seized from appellant's husband when he was apprehended on 28 February 1989. Clearly the larcenies by check represented the most serious misconduct, and these offenses were accomplished by appellant endorsing the same forged checks she was charged with possessing. Under these circumstances, we are satisfied that the convening authority would have approved the findings and sentence if he had been properly advised of the finding of not guilty of Specification 2 of Additional Charge III. Since we perceive no substantial risk of prejudice to the appellant, the convening authority's action will not be invalidated. Preparation of a corrected court-martial order, properly reflecting the court-martial's finding of not guilty of Specification 2, Additional Charge III, is hereby directed.

The remaining assigned error is resolved adversely to the appellant, and the findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON and Judge PRATT concur.