UNITED STATES, Appellee,

v.

Lisa M. SMITH, Airman, U.S. Air
Force, Appellant.

No. 65,168.
ACM 28014.

U.S. Court of Military Appeals.

Argued April 25, 1991.
Decided Sept. 12, 1991.

---

For Appellant: *Captain David D. Jividen* (argued); *Lieutenant Colonel Jeffrey R. Owens* (on brief); *Major Ronald G. Morgan.*

For Appellee: *Major Paul H. Blackwell, Jr.* (argued); *Lieutenant Colonel Brenda J. Hollis* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

During June of 1989, appellant was tried by a general court-martial composed of officer members at Lackland Air Force Base, Texas. Contrary to her pleas, she was found guilty of absence without leave, larceny, wrongful use of drugs, and receiving stolen property, in violation of Articles 86, 121, 112a, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 921, 912a, and 934, respectively. She was sentenced to a bad-conduct discharge, confinement and forfeiture of $400 pay per month for 12 months, and reduction to airman basic. The convening authority approved this sentence. On May 18, 1990, the Court of Military Review affirmed. 30 MJ 1022.

This Court granted review of the following issues of law:

## I

WHETHER THE MILITARY JUDGE ERRED BY DISALLOWING EVIDENCE THAT APPELLANT'S HUSBAND SERVED TIME IN PRISON FOR RAPE.

## II

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING TRIAL COUNSEL TO CROSS-EXAMINE APPELLANT ON THE CONTENTS OF A LETTER SHE HAD WRITTEN TO HER HUSBAND, AND BY ADMITTING THAT LETTER INTO EVIDENCE.

We hold that the military judge erred by refusing to allow the defense to elicit testimony about an earlier crime for which appellant's husband served time in prison. *See* Mil.R.Evid. 401 and 402, Manual for Courts-Martial, United States, 1984. Such error, however, was harmless beyond any doubt under the circumstances of this case. *Cf. Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). On the second issue, we conclude that appellant waived her privilege to prevent admission of evidence concerning her post-arrest letter to her husband about the charged offenses. *See* Mil.R.Evid. 510.

The Court of Military Review summarized the facts concerning the charged offenses and appellant's defense thereto, *inter alia*, as follows:

Appellant testified at great length concerning how her husband either committed the criminal acts charged against her or coerced, forced, tricked or cajoled her into aiding him. She referred back to their school days in Ohio and how Kevin followed her after she joined the Air Force; how he forced her to marry him; how he kept all of her money; how he threatened violence against her brother, grandmother, and herself; and how he slapped, struck and was otherwise abusive to her on many occasions. She claimed to be deathly afraid of him and willing to do almost anything to avoid his physical abuse.

She stated that Kevin forced her to leave San Antonio in AWOL status and that he forced her to tell her commander she needed to spend time with him. However, she could not explain why she failed to report him as her abductor to the Titus County Sheriff's Deputy who apprehended him. Nor could she explain why she said she was 13 years old when the Deputy initially questioned her. Additionally, she could not explain why she failed to turn him in at various highway stops, one on a military post, before Kevin was apprehended.

Regarding the two checks stolen from the Monsivais, she explained that Kevin introduced her to someone named Albert who she assumed was Mr. Monsivais, that she did not look at the checks closely when she endorsed them, that they used her checking account to deposit the proceeds because Kevin did not have an account and that the $450.00 check was, according to Kevin, for the sale of his car in Ohio. Since appellant and Kevin did not own a TV and stereo, she could not explain the $500.00 check for the sale of such items. She purportedly failed to look at that check closely when she endorsed it. Furthermore, appellant stated that, at some point, she recognized her husband's handwriting as that of the maker of the two checks.

As to the checks stolen from Mr. Harper which the appellant was convicted of receiving on 25 February 1989, she testified that Kevin forced her to endorse one on 25 February in the amount of $450.00 and another the same day in the amount of $150.00. Kevin had made both checks payable to appellant prior to forcing her to endorse them, she claimed. Kevin received the money for the second check, but it was later discovered to be a forgery. When appellant endorsed the Harper checks, she suspected something was wrong. According to appellant, she did not know about the re-

maining Harper checks seized from Kevin's car on 1 March.

30 MJ at 1024–25.

Official record evidence of an earlier rape conviction of appellant's husband was not presented to the members. However, the defense attempted to present less formal evidence of Kevin's rape conviction during the examination of appellant's grandmother. The grandmother testified that Kevin had been in the penitentiary and that this knowledge caused both the witness and appellant to fear Kevin. The military judge, however, would not allow this witness to testify as to why Kevin was in the penitentiary. He ruled that the reason for his imprisonment was irrelevant to the present proceedings.

On direct examination, appellant testified "[t]hat he [Kevin] had been in the penitentiary for rape." Trial counsel objected, based on the military judge's earlier ruling. The military judge then instructed the members to disregard that part of appellant's testimony. On cross-examination, when asked whether Kevin had killed someone, appellant replied, "No, but he's raped and assaulted people." During defense counsel's closing arguments, without trial counsel's objection, Kevin was characterized as a man "who served time in the penitentiary in Ohio for rape." Even trial counsel himself mentioned Kevin's rape conviction during closing argument.

The defense also attempted by means of a motion *in limine* to prevent admission of a letter signed by appellant and addressed to her husband, Kevin. It stated:

14 Apr 89

Dear Kev,

How are you? I'm alright, I guess. But now I am in a really deep mess. Here is the deal. If you really do care for me as you say and if you are willing to take the weight, it will be necessary for you to testify on my behalf. You will need to let these people know that. 1. You forced me to leave Texas. 2. That I didn't know about the checks and that I didn't sign them. Also, that I haven't used drugs. You'll need to tell them about the time you pressured me into smoking some weed back in Feb. that I didn't know that it was laced with cola. The Military can do absolutely nothing to you at all! They just need to know that you had a big influence on me and you made me do a few things I didn't agree with. But the military cannot do anything at all, nothing. Somebody will be in touch with you.

Love, Lisa

I promise that they cannot do anything to you at all.

LOVE

LISA

Nobody read this letter.

PROMISE

I won't get the divorce if you help me. I promise.

The military judge deferred ruling on this motion. Subsequent to appellant's direct testimony in this case, he ruled:

MJ: I find that during the testimony of Airman Smith, she did address these issues and confidential communications between her and her husband concerning these issues, and I will allow the prosecution to cross-examine concerning those matters contained in [the letter].

At the close of the defense case, trial counsel offered the letter for admission into evidence. The military judge admitted the exhibit, stating:

MJ: With regard to [the letter], I find that there has been evidence presented that shows that the accused and her husband were substantial participants in patently illegal activity. We have had testimony from a Mr. Pearsall who observed the accused use marijuana laced with cocaine in September of 1988, along with testimony of Special Agent Filipovich concerning the admissions of the accused in the use of marijuana and cocaine in September of 1988. The statements in the letter ... directly relate to the charged offenses, including the offense of use of marijuana and cocaine. Even though the date referenced in the letter by the accused is February, it is clear from

the context of the letter she is referring to the offense charged in September. It does not raise the issue of uncharged misconduct. The entire letter is relevant and its probative value is not substantially outweighed by any prejudicial effect to the accused. [The letter] is admitted.

Defense counsel later unsuccessfully objected to admission of this letter on grounds of its cumulative nature with respect to appellant's prior testimony about that letter. This objection was also overruled.

I

■ Appellant first claims that the military judge improperly curtailed her right to present the defense of duress at her court-martial. *See generally United States v. DeHart*, 33 MJ 58 (CMA 1991); RCM 916(h), Manual, *supra*. She notes that the judge several times prevented defense witnesses from testifying that her husband was convicted of rape and that she had knowledge of this conviction. She asserts this state-of-mind evidence was critical to her defense that her husband forced her to commit the charged offenses. She further argues that the military judge's instruction to the members to disregard this evidence rendered such error fatal.

There are several reasons why we must reject appellant's latter argument and instead find the error of the judge in this matter to be harmless. First, appellant was not the victim of the rape for which her husband was imprisoned, and it did not occur during their relationship. Thus, the remoteness of this particular conduct reduces its probative value on the question of appellant's state of mind during the charged offenses. Second, the military judge did permit these witnesses to testify that appellant knew her husband served time in prison and that this fact contributed to her fear of him. Thus, some state-of-mind evidence concerning her husband's prison term was admitted in this case. Third, appellant was permitted to fully recount the numerous threats and acts of physical violence perpetrated on her by her husband from the day they met through the time of the charged offenses. Kevin's propensity for violence was adequately communicated to the members. Fourth, despite the military judge's ruling to the contrary, civilian defense counsel repeatedly referred to appellant's husband's conviction for rape before the members. For these reasons, a claim of reversible error is not well taken in this case.

II

■ The second granted issue in this case centers on the prosecution's cross-examination of appellant concerning a letter to her husband and the subsequent admission of that letter into evidence. The letter was dated April 14, 1989, a date subsequent to the charged offenses and a time when appellant and her husband, Kevin, were in separate jails awaiting trial on these charges. The defense repeatedly objected to this evidence on the basis that this letter was a confidential marital communication which was privileged under Mil.R. Evid. 504(b)(1). The military judge overruled these objections initially on the basis of waiver and later on the basis of the so-called "crime-fraud" exception to the marital-communication privilege recognized in Federal civilian courts. *See generally United States v. Marashi*, 913 F.2d 724, 730–31 (9th Cir.1990).

The Court of Military Review rejected appellant's Mil.R.Evid. 504(b)(1) argument and found her letter not to be a "communication" within the meaning of this rule. 30 MJ at 1025–27. Relying on *United States v. Martel*, 19 MJ 917 (ACMR 1985), it considered this letter as an invitation or solicitation to her husband to commit perjury at her court-martial and thus not within the protected class of "communication." 30 MJ at 1027. Relying on Mil.R.Evid. 501(a)(4), it further opined that this result was consistent with the crime-fraud exception to the marital communication privilege recognized in Federal courts. 30 MJ at 1025. *See generally* J. Weinstein and M. Berger, 2 *Weinstein's Evidence* § 505(05)

at 505–36 to 505–41; *but see United States v. Tipton*, 23 MJ 338, 342 (CMA 1987). We need not decide this question today, as this case can be more readily resolved on the basis of the waiver rationale proffered by the military judge for his admission ruling.

Mil.R.Evid. 510 states:

Rule 510. Waiver of privilege by voluntary disclosure

(a) A person upon whom these rules confer a privilege against disclosure of a confidential matter or communication waives the privilege if the person or the person's predecessor while holder of the privilege *voluntarily discloses or consents to disclosure of any significant part of the matter or communication under such circumstances that it would be inappropriate to allow the claim of privilege.* This rule does not apply if the disclosure is itself a privileged communication.

(b) Unless testifying voluntarily concerning a privileged matter or communication, an accused who testifies in his or her own behalf or a person who testifies under a grant or promise of immunity does not, merely by reason of testifying, waive a privilege to which he or she may be entitled pertaining to the confidential matter or communication.

This rule of evidence on its face makes a clear distinction between those cases where an accused testifies directly to a portion of an otherwise privileged communication and those where he simply testifies at a court-martial. In the former, a waiver occurs; in the latter it does not. Less clear is the rule's treatment of cases where an accused testifies about the subject matter of the privileged communication or about other conversations on the same matter discussed in the privileged conversation. *Compare United States v. Trudeau*, 8 USCMA 22, 24, 23 CMR 246, 248 (CMA 1957), *with United States v. Martel, supra* at 930.

The drafter's analysis sheds some light on this question. It states:

Rule 510 is derived from proposed Federal Rule of Evidence 511 and is similar in substance to 1969 Manual paragraphs 151*a* which notes that privileges may be waived. Rule 510(a) simply provides that "disclosure of any significant part of the matter or communication under such circumstances that it would be inappropriate to claim the privilege" will defeat and waive the privilege. Disclosure of privileged matter may be, however, itself privileged; *see* Rules 502(b)(4); 503(b)(2); 504(b)(2). Information disclosed in the form of an otherwise privileged telephone call (*e.g.*, information overheard by an operator) is privileged, Rule 511(b), and information disclosed via transmission using other forms of communication may be privileged; Rule 511(b). Disclosure under certain circumstances may not be "inappropriate" and the information will retain its privileged character. Thus, disclosure of an informant's identity by one law enforcement agency to another may well be appropriate and not render Rule 507 inapplicable.

Rule 510(b) is taken from para. 151*b* (1) of the 1969 Manual and makes it clear that testimony pursuant to a grant of immunity does not waive the privilege. *Similarly, an accused who testifies in his or her own behalf does not waive the privilege unless the accused testifies voluntarily to the privileged matter of communication.*

1984 Manual, *supra* at A22–40 (Change 2) (emphasis added).

 The reasonable import of this language is that an accused who testifies about matters discussed in a privileged communication, rather than disclosing an actual portion of the privileged communication, waives the privilege. A finding of waiver in these circumstances is consistent with Federal practice. *See United States v. Benford*, 457 F.Supp. 589 (E.D.Mich. 1978). Moreover, a finding of waiver seems particularly appropriate where the accused predicates his defense on other conversations with his spouse concerning the same matter addressed in the disputed conversation. *See United States v. Aronoff*, 466 F.Supp. 855, 862 (S.D.N.Y.1979);

*Cummings v. People,* 785 P.2d 920, 926–27 (Colo.1990); *State v. Pendergras,* 621 S.W.2d 68 (Mo.App.1981).

Admittedly, appellant did not provide any direct testimony as to her letter to her husband of April 14, 1989. Yet, she did describe her marital relationship both during and after the charged offenses as a continual state of fear. She also testified to communications during the offense which reflected this purported fear of her husband. Moreover, her post-offense letter to her husband concerning these same offenses was clearly related to her prior disclosures and also reflective of her state of mind towards him. In this light, all these conversations could properly be considered one communication for purposes of Mil.R.Evid. 510(a). *See generally* Note, *Developments in the Law–Privileged Communications,* 98 Harv. L. Rev. 1450, 1631, 1634 (1985). Accordingly, for all of the above reasons, we hold that appellant's prior testimony in this case waived her privilege against disclosure of her post-offense letter. *See Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095, 1098–99 (7th Cir. 1987)

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COX concurs.

EVERETT, Senior Judge (concurring in part):

I

As to the first granted issue, I agree with the majority—for the reasons set out in its opinion—that the military judge's preclusion of appellant's testimony that her husband "had been in the penitentiary for rape" was harmless. I do want to state explicitly, however, what the majority opinion implies: The ruling was erroneous.

Appellant's principal defense was duress —specifically, that her husband so controlled and dominated her life through use of violence, force, and threats that she committed the instant offenses out of fear for her own safety. Given this framework of

her defense, the fact that her husband had at one time been convicted of rape—a crime of violence against the person—was not, as the Government put it at trial, simply evidence of his "past criminal activities." Instead, it was evidence showing why she feared for her own safety and why her fear was a reasonable one. *See* RCM 916(h), Manual for Courts–Martial, United States, 1984.

II

As the majority opinion reveals, appellant repeatedly objected to the prosecution's use of her letter to her husband on the basis of her confidential-marital-communication privilege. *See* Mil.R.Evid. 504(b), Manual, *supra.* Notwithstanding, the military judge denied the objection each time: First, he permitted the prosecution to use the letter during its cross-examination of appellant herself, ruling that she had waived her privilege by the substance of her direct examination; second, he granted the prosecution's proffer of the letter itself as substantive evidence, citing the so-called "crime-fraud" exception to the marital-communications privilege recognized in some Federal courts. *See, e.g., United States v. Marashi,* 913 F.2d 724, 730–31 (9th Cir. 1990).

I write separately because I am uncomfortable with the first rationale, relied upon by the majority, and because I disagree with the second, relied upon by the court below and left open by the majority. I will address them in reverse order.

A

Assuming that the Federal common law imposes the crime-fraud exception upon the privilege as to marital communications, I am unsure that this exception would apply to the facts here. In any event, this exception to a *common-law* privilege should not be superimposed upon the *formal* rule of privilege set out in the Manual.

Mil.R.Evid. 501 states the general rule as to claims of privilege in courts-martial. Subsection (a) provides four bases for claiming a privilege:

(a) A person may not *claim* a privilege with respect to any matter except as required by or provided for in:

(1) The Constitution of the United States as applied to members of the armed forces;

(2) An Act of Congress applicable to trials by courts-martial;

(3) These rules or this Manual; or

(4) The principles of common law generally recognized in the trial of criminal cases in the United States district courts pursuant to rule 501 of the Federal Rules of Evidence *insofar as the application of such principles in trials by courts-martial is practicable and not contrary to or inconsistent with the code, these rules, or this Manual.*

(Emphasis added.) The emphasized portions of this rule highlight the two reasons why appellant is correct when she contends that this rule is not a basis for invoking "Federal common law" to interpret a *common-law* rule of privilege when that privilege is covered by a specific Military Rule of Evidence.

First, the rule permits resort to the Constitution, a Federal statute, the Manual, or Federal common law as bases to *claim* a privilege. It reflects the intent of the drafters to provide "certainty and stability" in the areas covered by the specific privilege rules, *see* Mil.R.Evid. 502–09, and at the same time to embrace "the flexible approach taken by Congress" in Fed.R. Evid. 501 of including, as well, common-law privileges. Drafters' Analysis of Mil.R. Evid. 501, Manual, *supra* at A22–35 (Change 2). It nowhere and in no way suggests that Federal common law can be used to *limit* a privilege that is specifically provided for in the Manual.

Second, in any event subpart (4) permits resort to Federal common law *only* to the extent that it is "not contrary to or inconsistent with ... these rules...." This limitation on application of Federal common law is entirely logical, in view of the drafters' sensitivity to the need for "certainty and stability" in the areas addressed in the subsequent specific rules of privilege. Accordingly, if one of these Manual rules specifically gives a privilege without a particular limitation thereon, use of Federal common law to engraft such a limitation upon that rule is not permissible: Such an effort would be "contrary to or inconsistent with" that rule.

As the majority opinion points out, there *is* a specific rule in the Manual that proclaims a "[h]usband-wife privilege" protecting "[c]onfidential communications made during marriage." Mil.R.Evid. 504(b). The rule contains no caveat, however, that would except from the privilege a communication made in furtherance of a crime. At the same time, subsection (c) of Mil.R. Evid. 504 *does* contain certain exceptions both to this aspect of the husband-wife privilege and to the spousal-incapacity component; so it cannot persuasively be argued that the drafters of the rule either overlooked the need for exceptions or consciously decided not to set forth the exceptions which they intended to apply.

Accordingly, Mil.R.Evid. 504 must be viewed as containing all of the exceptions that the drafters intended should apply to the marital-communications privilege, *see generally United States v. Tipton*, 23 MJ 338, 343 (CMA 1987)—and these do not include the exception relied upon in this case by the military judge and the Court of Military Review.

### B

I am less sure than the majority that appellant waived her assertion of this privilege by the content of her direct testimony. Mil.R.Evid. 510(b) provides for waiver by an accused who testifies *"voluntarily concerning a privileged matter or communication."* (Emphasis added.) In my view, application of this language to appellant's testimony, which even the majority acknowledges did not touch *at all* on the letter itself, is an unwarranted expansion of the Rule.

It is irrelevant that appellant testified about other communications that reflected her purported fear of her husband. I do

not read the letter in contention as speaking to the issue of her fear one way or the other. Further, even if it did, what the majority condones is use of a privileged communication to impeach an accused's testimony regarding other events in the marital relationship. There is no "impeachment" exception to the privilege in Mil.R. Evid. 504 or anywhere else in the privilege rules.

The majority avoids this objection by its conclusion that "all these conversations could properly be considered one communication for purposes of Mil.R.Evid. 510(a)." 33 MJ at 121. Where different communications truly *are* one ball of wax and the declarant testifies as to some but not all of the conversations, this rationale might apply. Under the facts of *this* case, however, it strains too much to conclude that the letter in dispute is a communication that is intertwined with the matter as to which appellant testified.

### C

I do agree, however, with the majority's disposition of this second issue because, under the circumstances here, the letter was not "confidential" and, thus, not privileged.

"A communication is 'confidential' [only] if made privately ... and *is not intended to be disclosed to third persons* other than those reasonably necessary for transmission of the communication." Mil.R. Evid. 504(b)(2) (emphasis added). Appellant was briefed, upon entry into the military confinement facility, that her mail

would be read. *United States v. Smith*, 30 MJ 1022, 1025 n.1 (AFCMR 1990). On the basis of this information, if not otherwise, she also logically must have known that mail going to her husband in a civilian jail would be read. Thus, she knew that probably her letter would be read on *two* occasions before it reached her spouse. Under these circumstances, I do not believe it can be said that appellant did not intend her letter to be disclosed to third persons.

Moreover, the security personnel in appellant's confinement facility and in her husband's jail were not third persons "reasonably necessary for transmission of the communication." The key word is "transmission."

To illustrate: If a wife sends a telegram to her husband, the telegrapher is "reasonably necessary for transmission of" that telegram. In such instance and in other similar ones, the contents of the message are revealed not for substantive purposes but only as incidental to the transmission.

By contrast, the security personnel at confinement facilities would read a letter like this one for the purpose of consciously focusing on the substance of the letter. Under such circumstances, the contents are revealed *not* merely as incidental to transmission but *substantively*.

Accordingly, I conclude that appellant waived any privilege she might have had in the confidentiality of the letter to her husband. It simply was not "confidential" under the circumstances of this case.