**UNITED STATES, Appellee,**

v.

**Sergeant Robert E. DEMMINGS, United States Army, Appellant.**

**ARMY 9501972.**

U.S. Army Court of Criminal Appeals.

30 July 1997.

For Appellant: Captain Dirk Gifford, JA (argued); Major Leslie A. Nepper, JA; Captain Mark I. Goodman, JA (on brief).

For Appellee: Captain John M. Bergen, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Major Virginia G. Beakes, JA (on brief).

Before GORDON, JOHNSTON, and ECKER, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSTON, Judge:

Contrary to his pleas, the appellant was found guilty by a general court-martial composed of officer and enlisted members of willful disobedience of a superior commissioned officer, failure to obey a lawful general regulation, escape from custody, and assault with a dangerous weapon in violation of Articles 90, 92, 95, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 892, 895, and 928 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to confinement for two years, forfeiture of $824.00 pay per month for two years, and reduction to Private E1.

The appellant personally contends that it was fundamentally unfair for his treating psychiatrist to testify against him at his trial. We specified the issue [1] and ordered the parties to file briefs and present oral argument. Assuming that the psychotherapist-patient privilege may be asserted at a court-martial, on the facts of this case, we will

---

1. The Court specified two issues:

I. WHETHER A PSYCHOTHERAPIST PRIVILEGE IS INCORPORATED INTO MILITARY RULE OF EVIDENCE 501(A)(4). *SEE JAFFEE V. REDMOND,* — U.S. —, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

II. WHETHER THE APPELLANT WAS PREJUDICED BY THE ADMISSION OF TESTIMONY FROM CPT (DR.) TIMOTHY JENNINGS, CHIEF OF THE 24TH INFANTRY DIVISION MENTAL HEALTH ACTIVITY.

apply waiver and find neither error nor prejudice to the appellant.

## Facts

The appellant, a sergeant with over eight years of honorable service, became depressed and despondent over marital discord. The thought of losing his wife of eight years and his daughter was more than he could bear. Consequently, he sought mental health counseling at the command's Mental Health Activity clinic. On the patient intake questionnaire provided by the clinic, he indicated that he was "under a lot of [marital] stress" and that he had homicidal and suicidal thoughts.

Several months later, the appellant and his wife were involved in an altercation at their on-post quarters. After a series of arguments, the appellant pointed a pistol at his wife and threatened to shoot her and kill himself. They grappled with the gun while she attempted to calm him down. Eventually, she escaped into an adjacent bedroom, blockaded the door, and called the military police when she thought she heard a shot. When the police arrived, the hysterical wife escaped through the bedroom window. In the meantime, the appellant had locked himself in another bedroom. He threatened to "shoot" if anyone opened the bedroom door.

An experienced negotiator established contact with the appellant and persuaded him to open the door. The appellant sat on the floor of the room with the pistol in his mouth and his thumb on the trigger. Eventually, he was apprehended without harm to anyone.

Shortly after the episode, the appellant was taken for an emergency mental evaluation by the division psychiatrist. The treating psychiatrist, Captain Jennings, also was the Chief of the Mental Health Activity clinic. At the appellant's court-martial, the trial counsel called Captain Jennings as a witness during the prosecution's case-in-chief. The psychiatrist testified extensively about what the appellant told him during the initial treatment session and the subsequent emergency psychiatric evaluation. The therapist identified the patient intake questionnaire

that was introduced into evidence. He also testified about the appellant's mental state and intentions during the episode at the home. Trial defense counsel did not object to the testimony. Captain Jennings' testimony portrayed the appellant as mentally responsible but depressed and despondent at the time of the incident.

## Issues

This case was submitted to our court by appellate defense counsel "on the merits" without assigned error. Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the appellant personally asserts error. Citing *Jaffee v. Redmond*, —— U.S. ——, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the appellant contends that the testimony of his treating psychiatrist violated the psychotherapist-patient privilege. The appellant contends that information he gave to the mental health workers at the Mental Health Activity for his diagnosis and treatment was used "to help the government build a case against him." He further asserts that, "it was fundamentally unfair and wrong for his psychiatrist to use their patient-psychiatrist relationship, and the information that flows from that relationship against him at his criminal trial."

In order for the appellant's contention to prevail before our court, we must resolve two related issues: whether the federal psychotherapist-patient privilege is applicable under the Military Rules of Evidence to courts-martial;[2] and whether the appellant waived or forfeited the issue by failing to object to the use of testimony from his treating psychiatrist.

## Psychotherapist-Patient Privilege

In *Jaffee v. Redmond*, the Supreme Court resolved a split among the United States courts of appeals concerning the psychotherapist-patient privilege. In that case the Supreme Court held that confidential communications made in the course of treatment and diagnosis between a patient and licensed psychiatrists, psychologists, and social workers are protected from compelled disclosure.

---

2. The federal psychotherapist privilege enunciated in *Redmond* could be applied retroactively in military law to those cases pending on direct review but not yet final. *See United States v. Starks*, 24 M.J. 857 (A.C.M.R.1987).

The psychotherapist-patient privilege evolved slowly in the federal system. The need for such a privilege gradually gained recognition after the 1950s as psychology and psychotherapy attained professional legitimacy. Significant support for establishment of a psychotherapist privilege occurred in 1972 when the Chief Justice transmitted to Congress proposed Rules of Evidence for United States Courts and Magistrates. 56 F.R.D. 183 [hereinafter Proposed Rules].[3] Rather than approving the specific Proposed Rules, including the psychotherapist-patient privilege of Proposed Rule 504,[4] Congress approved a general privilege rule, Federal Rule of Evidence 501 [hereinafter Fed.R.Evid.].[5]

Although the proposed privilege rules were not adopted, the Senate Judiciary Committee reviewing the legislation explicitly stated:

It should be clearly understood that, in approving [the general rule of privileges] the action of Congress should not be understood as disapproving any recognition of a psychiatrist-patient, or husband-wife, or any other of the enumerated privileges contained in the Supreme Court rules. Rather, our action should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship and other privileges should be determined on a case-by-case basis.

28 U.S.C.A. Rule 501 (West 1984)(historical note at 370).

Explicit recognition of a psychotherapist-patient privilege came in 1983 when the United States Court of Appeals for the Sixth

Circuit decided *In re Zuniga*, 714 F.2d 632 (6th Cir.1983).[6] The Second Circuit followed in 1992. *See In re Doe*, 964 F.2d 1325 (2nd Cir.1992). Seventh Circuit recognition of the privilege came in April 1995. *Jaffee v. Redmond*, 51 F.3d 1346 (7th Cir.1995), *aff'd*, —— U.S. ——, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The Tenth Circuit implicitly recognized the concept in 1994, but limited its application. *See United States v. Burtrum*, 17 F.3d 1299 (10th Cir.1994).

Other federal courts of appeals were less receptive to the psychotherapist-patient privilege. *See In re Grand Jury Proceedings*, 867 F.2d 562 (9th Cir.1989); *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir.1983); *United States v. Meagher*, 531 F.2d 752 (5th Cir.1976). Each of these courts interpreted Rule 501 as limiting the development of privileges to those recognized by common law. *See In re Grand Jury Proceedings*, 867 F.2d. at 565; *United States v. Corona*, 849 F.2d 562, 566 (11th Cir.1988); *Meagher*, 531 F.2d at 753. The Supreme Court, however, had observed that Rule 501 "manifested an affirmative intention not to freeze the law of privilege" but that its purpose was to "provide the courts with the flexibility to develop rules of privilege on a case-by-case basis." *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980).

As a result of the *Redmond* decision, it is clear that the psychotherapist-patient privilege has been recognized since at least 1972 as separate and distinct from the physician-

---

3. The Proposed Rules defined nine specific non-constitutional testimonial privileges which the federal courts were to recognize. These proposed privileges included required reports, lawyer-client, psychotherapist-patient [hereinafter Proposed Rule 504], husband-wife, communications to clergymen, political vote, trade secrets, secrets of state and other official information, and identity of informer. A doctor-patient privilege was not included among them.

4. In pertinent part, Proposed Rule 504 specified:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purpose of diagnosis or treatment of his mental or emotional condition, including drug addiction, among himself, his psychotherapist, or persons who are participating in the diagnosis

or treatment under the direction of the psychotherapist.
56 F.R.D. 183, 241.

5. Fed.R.Evid. 501 provides in pertinent part:

Except as otherwise required by the Constitution of the United States or as provided by Act of Congress, or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

6. Analysis similar to that utilized by the Sixth Circuit in 1983 in *In re Zuniga* was used by the Supreme Court in *Redmond* in recognizing the psychotherapist-patient privilege. *See Redmond*, —— U.S. ——, 116 S.Ct. 1923; *In re Zuniga*, 714 F.2d 632.

patient privilege. The decision also served to highlight that the psychotherapist privilege is now recognized in some form in virtually every jurisdiction in the United States except the military justice system. *See Redmond,* —— U.S. at ——, 116 S.Ct. at 1929.

### Privileges in Military Law

Article 36, UCMJ, authorizes the President to prescribe rules "which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with [the UCMJ]." In 1980, the President signed an executive order that implemented military rules of evidence patterned after the Federal Rules of Evidence. Section V of the Military Rules of Evidence adopted many of the confidential communication privileges contained in the Supreme Court's proposed Federal Rules of Evidence.[7] The Military Rules of Evidence did not adopt the psychotherapist-patient privilege. The reason for failing to adopt the privilege is not discussed in the Drafters' Analysis to the Manual for Courts–Martial.

Military Rule of Evidence 101(b) indicates that federal privileges may apply at courts-martial. The rule states:

(b) *Secondary Sources.* If not otherwise prescribed in this Manual or these rules, and insofar as practicable and not inconsistent with or contrary to the code or this Manual, courts-martial shall apply:

(1) First, the rules of evidence generally recognized in the trials of criminal cases in the United States district courts; and

(2) Second, when not inconsistent with subdivision (b)(1), the rules of evidence at common law.

Military Rule of Evidence 501 provides in pertinent part that:

(a) A person may not claim a privilege with respect to any matter except as required by or provided for in:

(1) The Constitution of the United States as applied to members of the armed forces;

(2) An Act of Congress applicable to trials by courts-martial;

(3) These rules or this Manual; or

(4) The principles of common law generally recognized in the trial of criminal cases in the United States district courts pursuant to rule 501 of the Federal Rules of Evidence insofar as the application of such principles in trials by courts-martial is practicable and not contrary to or inconsistent with the code, these rules, or this Manual.

The Manual drafters determined that as a result of Mil. R. Evid. 501(a)(4), "common law privileges" as recognized in Article III courts "will be applicable to the armed forces except as otherwise [limited]." *See* Mil. R. Evid. 501 analysis at A22–37.

Because the Supreme Court has now recognized a federal psychotherapist privilege that is applicable to the trial of criminal cases in the United States district courts pursuant to Fed.R.Evid. 501, logically it would appear that a soldier could claim a similar privilege at a court-martial.[8]

Government appellate counsel, arguing that adoption of the privilege would be "contrary to or inconsistent with these rules," cite Mil. R. Evid. 501(d) in support of their position. In essence, their claim is that the subsection creates an absolute prohibition against recognizing a psychotherapist privilege. That provision states: "Notwithstanding any other provision of these rules, information not otherwise privileged does not become privileged on the basis that it was acquired by a medical officer or civilian physician in a professional capacity."

---

7. The Lawyer–Client Privilege (Mil. R. Evid.502), the privilege for Communications to Clergy (Mil. R. Evid.503), the Husband–Wife Privilege (Mil. R. Evid.504), the privilege concerning Identity of Informant (Mil. R. Evid.507), and the Political Vote (Mil. R. Evid.508) are similar to the proposed federal rules.

8. The appellant's claim of a psychotherapist privilege is consistent with the analysis enunciated by Senior Judge Everett in *United States v. Smith,* 33 M.J. 114 (C.M.A.1991)(Everett, J., concurring). In that case he noted that Mil. R. Evid. 501(a)(4) permits resort to the "Federal common law as [a basis] to *claim* a privilege." *Smith,* 33 M.J. at 120 (emphasis in original).

Mil. R. Evid. 501(d) does not specify, however, that psychotherapist-patient communications may never become privileged. The rule simply provides that such communications do not become privileged merely because the therapist may be a physician.

The non-binding Drafters' Analysis of the provision states, "Rule 501(d) prevents the application of a *doctor-patient* privilege. Such a privilege was considered to be totally incompatible with the clear interest of the armed forces in ensuring the health and fitness for duty of personnel." Mil. R. Evid. 501 analysis at A22–37 [emphasis added].

Both Mil. R. Evid. 501(d) and the Drafters' Analysis of the Manual provision specifically address the *physician-patient* privilege without specifically mentioning the separate concept of a *psychotherapist-patient* privilege. These two privileges have been treated as separate and distinct in federal jurisprudence since 1972. The distinction between the two privileges was readily evident in 1980 when the Military Rules of Evidence were adopted. The military rules did not adopt the psychotherapist-patient privilege. If the Manual provision had been intended to exclude the psychotherapist privilege from military practice, a specific disclaimer would have accomplished that task without ambiguity. The plain meaning of Mil. R. Evid. 501(a)(4) and 501(d) results, not in the exclusion of a psychotherapist privilege, but in allowing its evolution in the military justice system on a case-by-case basis.[9]

The expansive reading of Mil. R. Evid. 501(d) as advocated by the government in order to preclude a psychotherapist privilege has little support. One writer has suggested that the provision is "a substantial impedi-ment" to adopting the federal psychotherapist privilege. *See* Henley, *Postcards from the Edge: Privileges, Profiles, Polygraphs, and other Developments in the Military Rules of Evidence*, ARMY LAW., April 1997, at 100 (footnote omitted). This assertion assumes that the psychotherapist privilege is included within or is identical to a physician-patient privilege. Professors Saltzburg, Schlueter and Schinasi, on the other hand, have concluded that a narrow psychotherapist-patient privilege, rather than a broader doctor-patient privilege, would not be barred by the provision. *See* STEPHEN A. SALTZBURG ET AL., MILITARY RULES OF EVIDENCE MANUAL 537, (3d. ed.1991).

While government counsel contend that a psychotherapist privilege would be "totally incompatible with the clear interests of the armed forces," the validity of that proposition is not self-evident when the issue is confined to the admissibility of evidence at a court-martial. Furthermore, when the matter is more fully considered, certain logical inconsistencies are evident.[10]

As an additional point, we note the observation of the Supreme Court in *Redmond*, that much of the desirable evidence, such as admissions against interest, that the government seeks to place outside a privilege, is unlikely to come into being without a privilege. This "unspoken 'evidence' will therefore serve no greater truth-seeking function than if it had been spoken and privileged." *Redmond*, —— U.S. at ——, 116 S.Ct. at 1929. In addition, the "mere possibility of disclosure" may impede the development of the confidential relationship that is the sine qua non for successful psychotherapeutic

---

9. The Court of Appeals for the Armed Forces has recognized that the psychotherapist and doctor-patient privileges are separate and distinct. *See United States v. Mansfield*, 38 M.J. 415 (C.M.A. 1993); *United States v. Tharpe*, 38 M.J. 8, 15 n. 5 (C.M.A.1993).

10. For example, the attorney-client privilege of Mil. R. Evid. 502 encompasses communications made to a psychiatrist or psychotherapist who is part of the trial defense team. *See Tharpe*, 38 M.J. 8 at 15 n. 5. Why should an accused's confidential statements made to a psychiatrist be protected if the accused's attorney arranged for the examination, but not if the accused did so in his own capacity as a patient? As another example, the communication to clergy privilege applies within the military to confidential communications made as a formal act of religion or a matter of conscience. *See* Mil. R. Evid. 503. The clergy involved with these confidential communications frequently have received extensive training in counseling. Why should a conscience-based discussion with a religious counselor be privileged, but a similar discussion with a psychological therapist with even more extensive training not be privileged?

treatment of mental or emotional problems.[11]

■ For the foregoing reasons, we could hold that confidential communications between an accused and mental health professional in the course of diagnosis or treatment are protected from compelled disclosure at a court-martial.[12] We need not decide this issue, however, because we conclude that the appellant waived the issue by failing to assert the privilege at his court-martial.

■ At the time of his trial, Mil. R. Evid. 501(a)(4) allowed the appellant to assert the principles of the common law psychotherapist privilege as it was then recognized in the Second, Sixth, and Seventh Circuit Courts of Appeals of the United States. He failed to do so, even though the Supreme Court had given the issue considerable visibility by granting certiorari to resolve the split among the courts of appeals. See Jaffee v. Redmond, —— U.S. ——, 116 S.Ct. 334, 133 L.Ed.2d 234 (1995). These federal cases were sufficient to alert trial defense counsel that the psychotherapist privilege, if any, would have to be asserted at a court-martial in order to be preserved on appeal.[13]

■ We are also satisfied that the failure by the military judge to recognize the issue was not "plain error." To establish plain error, "appellant must demonstrate: that there was 'error'; that such error was 'plain, clear, or obvious'; and that the error 'affect[ed]' appellant's 'substantial rights.' " United States v. Czekala, 42 M.J. 168, 170 (1995), quoting United States v. Olano, 507 U.S. 725, 732, 734, 113 S.Ct. 1770, 1776–77, 1777–78, 123 L.Ed.2d 508 (1993). See also United States v. Hall, 46 M.J. 145 (1997). Because military law had not explicitly recognized the privilege and other jurisdictions were divided on the subject, the military judge could not have anticipated the holding of the Supreme Court in Redmond.

In the absence of plain error, and consistent with Article 66, UCMJ, we will apply waiver when an issue was not fully litigat-

11. The Supreme Court in Redmond highlighted the broad community interests served by the recognition of a psychotherapist privilege. Those concerns, as interlineated below, may be equally valid within the military:

> This case amply demonstrates the importance of allowing individuals to receive confidential counseling. Police officers [soldiers] engaged in the dangerous and difficult tasks associated with protecting the safety of our communities [country] not only confront the risk of physical harm but also face stressful circumstances that may give rise to anxiety, depression, fear, or anger. The entire community [unit and country] may suffer if police officers [soldiers] are not able to receive effective counseling and treatment after traumatic incidents, either because trained officers [soldiers] leave the profession prematurely or because those in need of treatment remain on the job.
> Redmond, —— U.S. at —— n. 10, 116 S.Ct. at 1929 n. 10.

12. The psychotherapist privilege that we suggest may apply to the military by virtue of Mil. R. Evid. 501(a)(4) need not be as broad as the similar federal privilege. Both the application and delineation of the privilege should be left to future cases applying specific facts.

13. The failure to raise the issue, assuming that the omission was unintentional, was not ineffective assistance of counsel. In order to prevail on an ineffectiveness claim, the appellant must show that counsel's performance was deficient and that he was prejudiced by that deficient performance. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); United States v. Scott, 24 M.J. 186 (C.M.A.1987). The test of counsel's performance is not that some number of options were not pursued or could have been pursued differently. United States v. Ingham, 42 M.J. 218, 229 (1995). Rather it is whether counsel's conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result. Strickland, 466 U.S. at 686, 104 S.Ct. at 2063–64; Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). On this record we do not find counsel's performance to be deficient. Counsel would have had to urge the military judge to recognize the privilege even though the Supreme Court had not resolved the split in authorities.

We also note that appellant suffered no prejudice on the facts of this case. Prejudice occurs when an accused shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. In this case, however, much of the testimony by the psychiatrist was helpful to the appellant. Little, if any, of that testimony dealt in any way with the elements of the offenses for which appellant was convicted. In addition, the challenged testimony raised the extenuating circumstances sought by defense counsel at trial and pursued even further during sentencing.

ed and preserved at trial. Captain Jennings' testimony relied upon communications between the appellant and mental health professionals during two visits—one a voluntary consultation and the other an emergency evaluation. The testimony elicited by the government addressed the appellant's criminal intent, but it also described him as despondent. On the facts of this case as revealed in the record of trial, we are constrained in applying a psychotherapist privilege even if such a privilege may be available in military law.

We have considered the remaining matters submitted by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge GORDON and Judge ECKER concur.