UNITED STATES, Appellee,

v.

Richard D. PROVINCE, II, Private First Class, U.S. Marine Corps, Appellant.

No. 95–1107.
Crim.App. No. 92–1495.

U.S. Court of Appeals for the Armed Forces.

Argued June 4, 1996.

Decided Sept. 30, 1997.

For Appellant: *Lieutenant James T. Mahoney,* JAGC, USNR (argued).

For Appellee: *Commander D.H. Myers,* JAGC, USN (argued); *Colonel Charles Wm. Dorman,* USMC (on brief).

*Opinion of the Court*

COX, Chief Judge:

Appellant was originally convicted, pursuant to his pleas, by a military judge sitting

alone as a special court-martial at Marine Corps Base, Quantico, Virginia, of unauthorized absence (2 specifications), in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. He was sentenced to a bad-conduct discharge, confinement for 90 days, forfeiture of $100 pay per month for 4 months, and reduction to pay grade E–1. The convening authority approved the sentence but in clemency suspended all confinement in excess of 67 days for 12 months from the date of trial. On June 27, 1995, the Court of Criminal Appeals dismissed the first specification of unauthorized absence as not stating an offense and as being unlawfully modified after the statute of limitations had expired. That court affirmed the findings of guilty of the remaining specification of unauthorized absence and affirmed the original sentence. 42 MJ 821 (1995). We granted review on February 16, 1996, of three issues raised by appellate defense counsel.[1]

## FACTS

On May 5, 1986, appellant began a period of unauthorized absence by failing to return from an authorized liberty period. On June 6, 1986, appellant's command preferred a single charge and specification against appellant alleging unauthorized absence in violation of Article 86. Appellant ended the original unauthorized absence at 0335 hours on December 31, 1987, by voluntarily surrendering himself to military authorities in Norfolk, Virginia. The authorities there then issued appellant stragglers' orders[2] directing him to report to his original command in Quantico, Virginia. Appellant acknowledged these orders, yet again failed to present himself to the ordered location on January 1, 1988, thus beginning a second period of unauthorized absence almost immediately.

Appellant ultimately returned to the Pittsburgh, Pennsylvania, area where he was apprehended by civilian authorities after being stopped for a traffic violation. He was then turned over to the military by these civilian authorities.

On March 6, 1992, the convening authority, then believing the absence to be one period, referred a single specification of unauthorized absence covering the period from 0531 hours, May 5, 1986, through February 24, 1992. During a pretrial meeting with his counsel, appellant gave the stragglers' orders to his trial defense counsel. Trial defense counsel subsequently turned over a copy of the orders to trial counsel during pretrial negotiations, believing that this matter would come out during the providence inquiry and complicate the plea. *See United States v. Francis,* 15 MJ 424 (CMA 1983). Additionally, he hoped that appellant's voluntary return on a previous occasion would serve as mitigation. Moreover, trial defense counsel asserted that he used this information during pretrial negotiations with the convening authority for a proposed administrative separation in lieu of trial, which was denied shortly

1. These issues were as follows:

I.
WHETHER TRIAL DEFENSE COUNSEL VIOLATED RULE 1.6 OF THE RULES OF PROFESSIONAL CONDUCT BY REVEALING INFORMATION RELATING TO THE REPRESENTATION OF APPELLANT, RESULTING IN A FURTHER CHARGE BEING FILED AGAINST HIM BY THE GOVERNMENT.

II.
WHETHER TRIAL DEFENSE COUNSEL HAS AN ETHICAL DUTY UNDER RULE 3.4 OF THE RULES OF PROFESSIONAL CONDUCT TO TURN OVER TO THE GOVERNMENT A DOCUMENT, GIVEN TO THE ATTORNEY BY APPELLANT, INDICATING THE EARLY TERMINATION OF APPELLANT'S UNAUTHORIZED ABSENCE AND COMMENCEMENT OF A SECOND UNAUTHORIZED ABSENCE, WHICH RESULTED IN REFERRAL OF AN ADDITIONAL CHARGE AND SPECIFICATION.

III.
WHETHER APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL DEFENSE COUNSEL DISCLOSED TO THE GOVERNMENT A DOCUMENT, GIVEN TO THE ATTORNEY BY APPELLANT, INDICATING THE EARLY TERMINATION OF APPELLANT'S UNAUTHORIZED ABSENCE AND COMMENCEMENT OF A SECOND UNAUTHORIZED ABSENCE, WHICH RESULTED IN REFERRAL OF AN ADDITIONAL SPECIFICATION.

2. These written orders, and how they were ultimately discovered, obtained, and admitted into evidence, are the source of controversy in this case. *See* Appendix.

before trial.[3]

Trial counsel turned the orders over to the convening authority, who then referred an Additional Charge of unauthorized absence against appellant on March 27, 1992, the second Charge covering the period from January 1, 1988, to February 24, 1992. Appellant was tried on April 9, 1992, 13 days after this Additional Charge was referred.

At trial, defense counsel made a motion to dismiss the original Charge and specification for failure to state an offense because the charge failed to state the words of criminality, "without authority." The military judge denied that motion. At that time, trial defense counsel took a brief recess to consult with appellant and withdrew a second defense motion to suppress the entry of the stragglers' orders into evidence.

The Court of Criminal Appeals subsequently dismissed the original Charge and specification, holding that the pen-and-ink change made at trial to include the words "without authority" in the original charge created an amended specification barred by the statute of limitations. That court held that failure of the military judge to advise appellant of that fact and to obtain a waiver of the statute of limitations on the record required dismissal of the Charge and specification. 42 MJ at 825.

## DISCUSSION

We address three questions regarding disclosure of the "stragglers' orders." *See* n. 2, *supra*. First, whether the disclosure was a violation of Rule 1.6 of the ABA Model Rules of Professional Conduct,[4] which prevents disclosure of information relating to the representation of a client. Second, whether disclosure of the document was required by Rule 3.4 of the Model Rules of Professional Conduct,[5] which prevents a party from denying

---

3. However, in his written motion, trial counsel asserts that the defense "was not bargaining for administrative action in lieu of trial by court-martial when he disclosed his surrender and subsequent unauthorized absence." We have no way of knowing whether defense counsel was negotiating directly with the convening authority and, thus, without trial counsel's knowledge. Therefore, the defense's use of this information prior to trial appears to be disputed.

4. Rule 1.6, ABA Model Rules of Professional Conduct, governs the Lawyer–Client Relationship. The text of the rule is as follows:

   **Confidentiality of Information**
   (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
   (b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
   (1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or
   (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyers' representation of the client.

5. The text of Rule 3.4 is:

   **Fairness to Opposing Party and Counsel**
   A lawyer shall not:
   (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
   (b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;
   (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
   (d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;
   (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or
   (f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
   (1) the person is a relative or an employee or other agent of a client; and
   (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

or blocking another party's access to evidence and material having potential evidentiary value. Third, whether trial defense counsel's disclosure of this document to trial counsel in negotiations amounted to ineffective assistance of counsel.

## I

■ We hold that disclosure of the stragglers' orders to trial counsel did not violate Model Rule of Professional Conduct 1.6 because the disclosure was made to further effective representation. Rule 1.6(a) states in pertinent part, "A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation...." The record supports the conclusion that the client wanted to plead guilty to the unauthorized absences because no legal defense appeared to be viable, and the client desired to avoid as much confinement as possible. Pleading guilty under the circumstances was a much better alternative than contesting the case on the question of a change made before arraignment, attempting to invoke the statute of limitations, and appealing these questions while in the brig. Disclosure of this material in advance of the plea facilitated the result that appellant deemed desirable. There was no guarantee that if this information was withheld appellant would have received the windfall of no conviction whatsoever.[6] Defense counsel, in disclosing this information, was acting in the best interests of his client and was attempting to secure the best result possible under the circumstances for a client who had been an unauthorized absentee for over 5 years, during both Operations Desert Shield and Desert Storm.

Additionally, the disclosure of the extremely brief break in time between unauthorized absences seemed to be a matter that was raised to facilitate acceptance of the plea in order to secure the benefits of the mitigating effects of a plea. Moreover, defense counsel states in his affidavit that he was attempting to persuade and bargain with the convening authority for an administrative discharge in lieu of trial. The disclosure of the stragglers' orders was made in facilitation of representation, and defense counsel would be impliedly authorized to disclose this information for this purpose. We find no support for either side regarding whether appellant expressly consented to such a disclosure of this information. Lastly, this case was referred to a special court-martial where the sentence was limited by jurisdiction. See Art. 19, UCMJ, 10 USC § 819. Thus, regardless whether appellant was convicted of one or two specifications of unauthorized absence, he was not placed in any greater jeopardy by this disclosure.

## II

The second question posed is a difficult one. Rule 3.4 of the ABA Model Rules of Professional Conduct prevents any party from blocking another party's access to evidence. In pertinent part Rule 3.4 provides, "A lawyer shall not: (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value." The difficult question here is whether appellant's stragglers' orders were the type of evidence already accessible to the Government and, thus, not covered by this rule, or whether defense counsel would have been "concealing" evidence by not disclosing his possession of the original or appellant's copy of such orders.

■ The record is unclear on exactly what type of document the stragglers' orders were; which offices would have maintained copies; and for how long such copies would have been maintained. This document was of the type to have been created and main-

---

6. Since this issue was not again raised or granted before this Court, we do not now address the question of whether the amendment and addition of the words "without authority" was in fact a major change that would have required the affirmative waiver on the record by appellant of the statute of limitations as a defense. However, we are not necessarily persuaded by the Court of Criminal Appeals' rationale on that issue. We reserve judgment on that question for another day.

tained by the Government. While it is probably safe to say that a copy of the orders may have been difficult to find, especially at a base as large as Norfolk, theoretically the Government would always have the best opportunity to retrieve a copy of these orders. This is doubly the case in a situation such as this one, where the Government obviously filed and kept the original charge sheet containing the original Charge that was preferred on June 6, 1986. Certainly, if a file with the original charge sheet was successfully kept for that great length of time, there must be another file which could have been maintained for the filing of a document having such alleged importance as the stragglers' orders. We thus hold, under the facts of this case, that the Government had an equal opportunity to possess a copy of the orders. There was, therefore, no obligation on the part of defense counsel to turn over the orders under this Rule. Under the facts of this case, defense counsel would not have been unlawfully concealing this document because the document was in fact created and maintained by the Government. However, had the Government asked the defense for a copy of this document, alleging that their copy had been lost or destroyed, then defense counsel would have been obligated to turn over the orders. *See* RCM 701(b)(3), Manual for Courts–Martial, United States (1995 ed.). Since the copy or original of the orders possessed by appellant was his own copy and not that of the Government, there was no duty to affirmatively disclose it to the Government.

■ This case is a close call, and each case depends upon its unique circumstances. *See, e.g., Clutchette v. Rushen,* 770 F.2d 1469 (9th Cir.1985) (defense investigator required to turn over receipts that led to incriminating evidence because the agent removed the receipts from their resting place and thus could not claim attorney-client privilege); *People v. Meredith,* 29 Cal.3d 682, 175 Cal.Rptr. 612, 631 P.2d 46 (1981) (defense investigator required to turn over robbery/murder victim's wallet to police discovered as a result of client's confidential communication because investigator took possession of it rather than leaving it undisturbed); *People v. Lee,* 3 Cal. App.3d 514, 83 Cal.Rptr. 715 (1970) (lawyer must turn over physical evidence of crime to prosecution; evidence itself not privileged); *see also* Comment, The Right of a Criminal Defense Attorney to Withhold Physical Evidence Received from His Client, 38 U.Chi. L.Rev. 211 (1970) (advocates that defense lawyers be required to turn over physical evidence to the prosecution). We believe that contacting one's state bar licensing body and using the *ex parte* hearing with the military judge for close questions like this would be advisable. *See United States v. Rhea,* 33 MJ 413, 415–16 (CMA 1991).

## III

■ Assistance of counsel was not ineffective in this case. On the contrary, the assistance rendered by trial defense counsel was highly effective, especially in light of the fact that appellant had been an unauthorized absentee for over 5 years. The sentence, which resulted in well under 3 months' confinement, minimal forfeitures, reduction in grade, and a bad-conduct discharge, was far less than might be expected for such an offense. In this respect, counsel's performance was exemplary and fit squarely within the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Appellant in this case was not deprived of a fair trial. Counsel could not have predicted that the original Charge of unauthorized absence would be dismissed by the Court of Criminal Appeals. We will not hold counsel to an impossible standard.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Judges SULLIVAN, CRAWFORD, GIERKE, and FLAUM [7] concur.

---

7. Judge Joel M. Flaum of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

A P P E N D I X

## UNITED STATES MARINE CORPS

MARINE CORPS SECURITY FORCE BATTALION, ATLANTIC
NAVAL BASE, NORFOLK, VIRGINIA 23511-5697

IN REPLY REFER TO

5800
MN28-1
31 Dec 87

From: Commanding Officer, Marine Corps Security Force Battalion, Atlantic,
Naval Base, Norfolk

To: Private First Class Richard D. Province, II, 184 60 4944/0351, U.S.
Marine Corps

Subj: STRAGGLERS ORDERS

Ref: (a) MCO P5800.6B, LEGADMINMAN

1. Having surrendered to Tidewater Area Shore Patrol Headquarters, Norfolk,
Virginia, at 0335, 31 December 1987, and subsequently delivered to Marine Corps
Security Force Battalion, Atlantic, Naval Base, Norfolk, Virginia, at 0447, 31
December 1987, you will proceed, as routed in paragraph two, to: Commanding
General, Marine Corps Development and Education Command, Quantico, Virginia,
and upon arrival, report to: Commanding Officer, Security Battalion, Marine
Corps Development and Education Command, Quantico, Virginia, no later than
2400, 31 December 1987.

## ITINERARY OF TRAVEL

Dep: Norfolk, Virginia, at 1230, 31 December 1987, via Greyhound Buslines.
Arr: Triangle, Virginia, at 1650, 31 December 1987.

2. You are advised that deviation from this schedule constitutes disobedience
of orders, a serious military offense. Should you not maintain the schedule
because of sickness, wreck, or disaster, you will advise the Commandant of the
Marine Corps (MHL-30) by collect telegram and request instructions.

3. By authenticated copy of these orders, your commander is requested to
declare you a deserter in the event you fail to report immediately upon
completion of travel directed herein and to publish a warrant for your arrest
(DD Form 553).

4. TravcharAppn: 1781105.2702,021,12691,000027,2D,000000,000000071130.

5. GTR(s) V-4,937,286 was issued in connection with these orders. The
traveler shall report to the passenger transportation officer at destination
and report all unused tickets, transportation requests, and meal ticket
requests, and change of service of a lesser value than authorized by the
tickets. Cost to the Government for GTR(s) issued: $22.00 DD Form 139 will
be completed by this Command for the cost of the GTR(s).

J. L. HAYES
By direction

# ORIGINAL ORDERS

FIRST ENDORSEMENT

<u>MCSFBN LANT, NB, NORVA 31 DEC 87</u>

1.  Received the original of these orders at 0800 on 31 December 1987.

2.  I hereby certify that these orders have been read and explained to me and that I understand same.

RICHARD D. PROVINCE, II

DISTRIBUTION:  Signed original to absentee or deserter;
            Signed copy to CMC (MHL-30)
            Signed copy to commander named in paragraph 1 of the orders;
            Duplicate original to file (i.e., signed copy)
            CG (Code 470), Marine Corps Logistics Base, Albany, GA 31704 5001
            (plus one copy of DD Form 139, GTR/meal ticket).