CRAWFORD, Chief Judge
(dissenting on Issue I and concurring in result on Issue III):
I. Defense Counsel’s Release of Appellant’s Unsworn Written Statement
I disagree with the majority’s conclusion that defense counsel erred in releasing Appellant’s written statement. First, defense counsel’s declaration of intent to submit the exhibit as Appellant’s unsworn statement establishes that the statement was not privileged in the first place. Moreover, even assuming the statement was privileged, it is clear from the record that Appellant himself waived the privilege, as well as impliedly authorized defense counsel to waive the privilege and release the statement on Appellant’s behalf. For these reasons, I respectfully dissent from the majority’s resolution of Issue I.
A. Attorney-Client Privilege and Appellant’s Statement
It is well-established that “[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client____”[1] Moreover, “[e]vidence of a statement or other disclosure of privileged matter is not admissible against the holder of the privilege if disclosure was compelled erroneously or was made without an opportunity for the holder of the privilege to claim the privilege.”[2] “The privilege is intended to encourage ‘full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.’ ”[3]
Nevertheless, it is equally well-established that material is not privileged if it is intended to be disclosed to a third party.[4] In United States v. Grill,[5] this Court championed the accused’s right to make an unsworn statement pursuant to the Rules for Courts-Martial 1001(c)(2)(C)[hereinafter R.C.M.]. In keeping with Grill, the United States Air Force promulgated Air Force Rule 3.1(D) on May 1, 2000, requiring that the defense give the Government at least three days’ notice of intent to submit an unsworn statement. Although this rule has since been repealed, it was in effect at the time of Appellant’s court-martial, and, accordingly, defense counsel in this case presumably gave the Government the required notice of his intent to submit an unsworn statement on Appellant’s behalf. In making this required disclosure, defense counsel displayed his and Appellant’s intent to disclose the statement to a third party and, in so doing, established that the statement was not privileged.
This conclusion is further supported by Appellant’s own expression of intent as to defense counsel’s use of the statement. Before Appellant went absent without leave (AWOL), defense counsel extensively used Appellant’s statement at trial to cross-examine Government witnesses. Appellant voiced no objection to defense counsel’s use of the statement in this manner, and we may therefore reasonably assume that Appellant gave the statement to defense counsel with the full knowledge and intent that the statement would, in a manner left to defense counsel’s discretion, be released at trial. Having done *212 so in the first place, Appellant cannot now claim that attorney-client privilege should have prevented the statement’s release.
B. Appellant’s Waiver of the Statement’s Privilege
Even assuming the statement was privileged, it is well established that an accused may waive the attorney-client privilege. If an accused “testifies] voluntarily concerning a privileged matter or communication ... [the accused] waive[s] a privilege to which he or she may be entitled pertaining to the confidential matter or communication.”[6] Accordingly, I would hold that when Appellant “voluntarily testifies about a significant part of the matters contained in” the released statement, he waived any future challenge to the statement’s release on the grounds that defense counsel violated the attorney-client privilege.[7] In this vein, as noted above, the record is clear that defense counsel further used the statement’s content in his cross-examination of Government witnesses. Appellant was present at these points in the trial, yet voiced no objections to defense counsel’s use of the “privileged” statement.
Even assuming Appellant did not himself waive the attorney-client privilege, “[e]xcept to the extent that the client’s instructions or special circumstances limit that authority, a lawyer is impliedly authorized to make disclosures about a client when appropriate in carrying out the representation.”[8] The facts of the instant case present exactly one such circumstance. As the lower court aptly noted in its unpublished opinion, “[A]fter he went AWOL, the appellant left his trial counsel with the unquestionably difficult position of having to decide what, if anything, to offer as an unsworn statement during the sentencing party of the appellant’s court-martial.”[9] Facing this circumstance, trial defense counsel certainly had the implied authority to submit on Appellant’s behalf otherwise privileged matters in an effort to defend Appellant as successfully as possible. Additionally, Appellant, by his own misconduct, forfeited any right to object to counsel’s use of the statement.
II. Appellant’s Conviction of Non-Forcible Sodomy in Light of Lawrence v. Texas
As to Issue III, I agree with the majority’s conclusion that Appellant’s conviction should not be reversed under Lawrence v. Texas.[10] But I disagree with the majority’s assumption that Appellant’s conduct falls within the protected liberty interest enunciated in Lawrence. There are factual distinctions between the petitioners’ offense in Lawrence and Appellant’s offense in the case at bar. Because of these significant differences, I would hold that this is not a Lawrence case and would reserve for another day the questions of whether and how Lawrence applies to the military. The factual differences between Lawrence and Appellant’s case are striking. The offense of sodomy with which the petitioners in Lawrence were charged occurred in the context of a consensual, adult relationship. The Court noted at the outset of its opinion that at the time of their arrest, the petitioners in Lawrence were in Mr. *213 Lawrence’s apartment, engaging in a private, consensual sexual act.[11] The Court reiterated this factual context shortly thereafter: “The petitioners were adults at the time of the alleged offense. Their conduct was in private and consensual.”[12] At the conclusion of its opinion, the Court once again emphasized the specific factual context of the petitioners’ acts:
The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter. The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle.[13]
Indeed, the nature of the petitioners’ relationship as described by the Court was central to the Court’s conclusion that the State may not curtail the petitioners’ “ ‘intimate and personal choices [which are] central to [their] personal dignity and autonomy.’ ”[14]
The facts surrounding Appellant’s offense are strikingly different. Appellant, a non-commissioned officer, was convicted, in pertinent part, of non-forcible sodomy with Senior Airman H, whom Appellant supervised in his work unit. Appellant was not involved in a romantic relationship with Senior Airman H, as were the petitioners in Lawrence. On the contrary, Appellant’s offense occurred after a night of drinking when Senior Airman H “crashed” on Appellant’s couch, wearing only boxer shorts and a T-shirt, and awoke to find Appellant performing oral sex on him. Senior Airman H testified that he did not protest Appellant’s action for fear of how Appellant would respond. This event followed two other incidents of sexual contact between Appellant and Senior Airman H, which involved touching and dancing, on evenings when Appellant and Senior Airman H had been out drinking and socializing.
Clearly, Appellant’s offense occurred in the context of a casual relationship with a subordinate airman who testified that he was too frightened to protest. This is a far cry from the consensual adult relationship, born of intimate and personal choice, which characterized the petitioners’ behavior in Lam'ence. Indeed, Appellant’s offense concerned precisely what the Supreme Court stated Lawrence did not concern: an individual, Senior Airman H, who might have been coerced, in a situation where consent might not easily have been refused, given Senior Airman H’s subordinate professional position. Senior Airman H himself expressed his fear of rejecting a superior, noncommissioned officer, who was in fact his supervisor at work. This case certainly did not involve “two adults [who acted] with full and mutual consent from each other.” In sum, the act for which Appellant was convicted in specification 1 of Charge II was not the kind of mutual and intimate act in the context of which the Supreme Court decided Lawrence.
An enumerated punitive Article within the UCMJ, Article 125 provides:
(a) Any person subject to this chapter who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy. Penetration, however slight, is sufficient to complete the offense.
(b) Any person found guilty of sodomy shall be punished as a court-martial may direct.[15]
Article 36 authorizes the President to prescribe “modes of proof[] for eases arising under” the punitive Articles “which shall ... apply the principles of law and the rules of *214 evidence!.]”[16] Thus, although Article 125 outlines the general parameters of the sodomy offense in the military, the charge and findings in each case describe the specific manner in which Article 125 was violated, pursuant to Article 36. Certainly, the modes of proof described in the charge and findings of an Article 125 case may differ substantially from case to case. For this reason, I will consider Article 125 only to the extent it proscribes the conduct for which Appellant was charged and convicted, as described in the charge and findings under specification 1 of Charge II.[17]
Unlike the petitioners in Lawrence, who were both charged with, and convicted of, consensual sodomy without any evidence of force, Appellant was charged with three specifications of sodomy “by force and without consent” under Article 125 (Charge II). These charges were based on probable cause that Appellant committed the general offense described in Article 125 with the added element of force.[18] Congress has dictated that even if an accused is found not guilty of the offense as charged, the accused may, in the alternative, be found guilty “of an offense necessarily included in the offense charged!.]”[19] Accordingly, the military judge instructed the members on the lesser included offenses available for each of the three specifications under the forcible sodomy charge, including non-forcible sodomy, attempted forcible sodomy, assault with the intent to commit sodomy, indecent assault, and assault consummated by a battery. The members ultimately convicted Appellant of non-forcible sodomy (specification 1), forcible sodomy as charged (specification 2), and assault consummated by a battery (specification 3).
In reference to specification 1, which Appellant challenges on appeal, the judge instructed the members on the lesser-included offense of non-forcible sodomy specifically as follows:
The offense charged, forcible sodomy, and the lesser included offense of non-forcible sodomy differ primarily in that the offense charged requires, as an essential element, that you be convinced beyond a reasonable doubt that the act of sodomy was done by force and without consent of Senior Airman H, whereas, the lesser included offense does not include such an element.
(Emphasis added.) As noted above, the members found Appellant guilty of this lesser-included offense, instead of the specification as charged. Appellant now argues that this conviction of non-forcible sodomy was essentially a conviction of consensual sodomy. On the contrary, I would conclude that although the finding of non-forcible sodomy was not a conviction of the charged offense of forcible sodomy, neither did it establish consent. Unlike Lawrence, in which there was no evidence of force whatsoever, the finding in this case simply showed that the members were not convinced beyond a reasonable doubt that the act of sodomy was done by force and without consent—in other words, that the evidence of force was simply insufficient.[20] This finding did not negate the probable cause of force that supported Appellant’s charge, nor did it establish consent. Indeed, Appellant did not, prior to trial, move to dismiss or amend the forcible sodomy charge for lack of evidence of force.
Given this factual context of Appellant’s charge, it is obvious why this is not a Lawrence case. The following diagram demonstrates what this case is truly about. On the far left is the purely consensual case as in *215 Lawrence; on the far right is a case with a conviction for forcible sodomy beyond a reasonable doubt. This case falls in the middle because there was probable cause to believe that Appellant had committed forceful sodomy. R.C.M. 302(c).
[[Image here]]
In short, one does not need to go beyond the facts of this case and the language of the Lawrence opinion to conclude that Appellant’s conduct did not fall within the liberty interest set forth in Lawrence. Certainly this case is factually distinguishable from Lawrence because it does not “involve two adults, who with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle.”[21] Further, Appellant was a senior noncommissioned officer who supervised and rated the victim. Thus, the victim was not in a position where “consent might ... easily be refused.”[22] And finally, to this date, the parties have not contested probable cause to believe that Appellant committed forcible sodomy.
For these reasons, I concur in the result as to Issue III.

. Military Rule of Evidence 502(a) [hereinafter M.R.E.].

. M.R.E. 511(a).

. Swidler & Berlin v. United States, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

. See, e.g., Cavallaro v. United States, 284 F.3d 236, 246-47 (1st Cir.2002)("Generally, disclosing attorney-client communications to a third party undermines the privilege.”).

. 48 M.J. 131 (C.A.A.F.1998).

. M.R.E, 510(b). See also United States v. Smith, 33 M.J. 114, 118 (C.M.A.1991)(observing that "an accused who testifies about matters discussed in a privileged communication, rather than disclosing an actual portion of the privileged communication, waives the privilege”).

. United States v. Marcum, No. ACM 34216, 2002 WL 1822283, slip op. at 5 (A.F.Ct.Crim.App.2002)(presenting a finding of fact in accordance with Article 66(c)).

. ABA Model Rules of Prof’l Conduct Rule 1.6 cmt 5 (2004 ed.)(mirrored by Air Force Rule of Prof'l Conduct 1.6); see also United States v. Province, 45 M.J. 359, 362 (C.A.A.F.1996)(holding that counsel's disclosure of information relinquished to him by the client was "impliedly authorized" by the client); Stephen A. Salzburg et al.. Federal Rules of Evidence Manual § 501.02[5][k][ii] (8th ed.2002); John Henry Wigmore, Evidence in Trials at Common Law § 2326 at 633 (McNaughton ed.1961). This implied authority is consistent with counsel’s duty to act at all times in a client’s best interest. See United States v. Godshalk, 44 M.J. 487, 492 (C.A.A.F.1996)(noting that some disclosures by an attorney do not breach the attorney-client privilege if the attorney is acting in the client’s best interest).

. Marcum, No. ACM 34216, 2002 WL 1822283, slip op. at 6.

. 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508.

. Id. at 564, 123 S.Ct. 2472.

. Id.

. Id. at 578, 123 S.Ct. 2472.

. Id. at 574, 123 S.Ct. 2472 (quoting Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. at 833, 851, 112 S.Ct. 2791 (1992)).

. Article 125, UCMJ, 10 U.S.C. § 925 (2000).

. Article 36, UCMJ, 10 U.S.C. § 836 (2000).

. See Parker v. Levy, 417 U.S. 733, 760, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)(noting the Court's repeated reluctance to strike down a statute in its entirety when there are a number of situations to which it might otherwise be constitutionally applied).

. See R.C.M. 307(b)(2) (outlining the prerequisites for bringing the charges against an accused); United States v. Miller, 33 M.J. 235, 237 (C.M.A.1991)(finding that R.C.M. 307(b)(2) implicitly requires probable cause to support charges against an accused).

. Article 79, UCMJ, 10 U.S.C. § 879 (2000).

. See Ex Parte Taylor, 101 S.W.3d 434, 447 n. 3 (Tex.Crim.App.2002) (Hervey, J., dissenting)(distinguishing a general verdict of acquittal from a verdict of not guilty due to insufficient evidence).

. Id.

. 539 U.S. at 578, 123 S.Ct. 2472.